RURAL ELECTRIC CONVENIENCE COOPERATIVE CO., Plaintiff-Appellant, *v.* ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.

Fourth District   No. 4—82—0026

Opinion filed September 16, 1982.

Edward G. Pree, of Pree & Pree, and Jon W. DeMoss, both of Springfield, for appellant.

William S. Hanley and Gary A. Brown, both of Sorling, Northrup, Hanna, Cullen and Cochran, Ltd., of Springfield, for appellee Central Illinois Public Service Company.

Tyrone C. Fahner, Attorney General, of Springfield (Allen C. Wesolowski, Assistant Attorney General, of counsel), for appellee Illinois Commerce Commission.

JUSTICE MILLS delivered the opinion of the court:

Electric Supplier Act revisited.

This is the *tenth* chapter in this case.

We now review a classic battle of the experts.

In short—we again affirm.

This litigation began in 1974 when Central Illinois Public Service Company (CIPS)—pursuant to section 7 of the Electric Supplier Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 407)—served Rural Electric Convenience Cooperative Co. (Rural Electric) with notice that it intended to extend certain of its existing lines to serve Freeman Coal Company's new mine that was to be constructed in Macoupin County. Pursuant to the same statute, Rural Electric filed a complaint with the Illinois Commerce Commission (Commission) stating that CIPS was not entitled to serve the mine.

Rural Electric and CIPS had previously entered into an agreement that Rural Electric was to provide service to the area where the mine was to be located. The exception to the agreement was that where the new customer's:

> "*** anticipated load during the first year of normal operation will require, as determined in accordance with accepted engineering practices, that the load be supplied through a connection to and/or an extension of an existing as of July 2, 1965, line having a voltage of 34.5 KV or higher, the supplier shall be determined under the Electric Supplier Act as approved July 2, 1965."

This agreement was entered into and approved by the Commission pursuant to section 2 of the Electric Supplier Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 402).

In ruling on Rural Electric's complaint, the Commission found that the exception to the parties' agreement applied, that Rural Electric had not been serving customers at the location of the mine on the effective date of the Electric Supplier Act, and that it was in the public interest that CIPS serve the mine. (Ill. Rev. Stat., 1981, ch. 111²/₃, pars. 405, 408.) The circuit court affirmed the Commission, and this court affirmed the circuit court. *Rural Electric Convenience Cooperative Co. v. Illinois Commerce Com.* (1977), 56 Ill. App. 3d 281, 371 N.E.2d 1143.

Thereafter, the supreme court granted Rural Electric's petition for leave to appeal, vacated the judgments, set aside the order below, and remanded the cause to the Commission. The basis for the supreme court's action was that the Commission had failed to give effect to certain language of the parties' service area agreement. Therefore, the Commission was directed to consider whether accepted engineering practices would require that the new mine be supplied through connection to and/or extension of a 34.5 kilovolt (KV) line which was in existence on July 2, 1965 (the effective date of the Act) rather than *any* 34.5 KV line. See *Rural Electric Convenience Cooperative Co. v. Illinois Commerce Com.* (1979), 75 Ill. 2d 142, 387 N.E.2d 670.

The Commission conducted further hearings and received extensive expert testimony on whether accepted engineering practices required that the mine be served by an existing as of July 2, 1965, 34.5 KV or larger line. (There was only one such line in the area of the mine—the one owned by CIPS and through which it proposed to provide service to the mine.) The Commission again decided in favor of CIPS.

On administrative review, the circuit court first reversed and remanded to the Commission for determination of the "first year of normal operation" of the mine. Thereupon, CIPS sought a writ of *mandamus* in the supreme court. The court declined to issue the writ, but in the exercise of its supervisory jurisdiction, vacated the order of the circuit court and directed the circuit judge to confine his review of the Commission's order to the scope of the supreme court's directions to the Commission on remand. The circuit court subsequently affirmed the Commission and Rural Electric prosecutes this appeal.

■ This hoary litigation has thus been whittled down to a single, precisely formed issue: Did accepted engineering practices require that the mine in question be connected to an existing as of July 2, 1965, 34.5 KV or larger line? The Commission answered affirmatively. And its decision will not be disturbed unless it is contrary to the man-

ifest weight of the evidence. Ill. Rev. Stat. 1981, ch. 111⅔, par. 72; *Cox v. Daley* (1981), 93 Ill. App. 3d 593, 417 N.E.2d 745.

Such cannot be said of the decision in this case. The Commission hearing was a classic battle of the experts. Rural Electric produced witnesses with impressive credentials who testified that accepted engineering practices did not require that the mine be connected to an existing as of July 2, 1965, 34.5 KV or larger line. The witnesses for CIPS were all CIPS employees whose credentials were perhaps not as elaborate, but they were undoubtedly more familiar with the system in question. They testified that accepted engineering practices *did* require that the mine be connected to an existing as of July 2, 1965, 34.5 KV or larger line.

█ █ Testimony of experts is to be considered in light of their qualifications, the quality of their testimony, and their credibility. (*McSwain v. Chicago Transit Authority* (1977), 48 Ill. App. 3d 190, 362 N.E.2d 1264.) As we have noted, Rural Electric's witnesses had outstanding credentials, but CIPS' were more familiar with the system. As a result, Rural Electric's experts based their opinions on assumptions and incomplete information, while CIPS' witnesses testified from a thorough working knowledge of the system. The credibility of CIPS' witnesses was called into question by the fact that they were testifying for their employer, but it may be assumed that Rural Electric's experts were not testifying *gratis*. Thus, it cannot be said that Rural Electric's witnesses were so superior that it was error to reject their testimony.

It should be noted that the Commission's original order found CIPS' 34.5 KV line adequate under section 8 of the Electric Supplier Act. (Ill. Rev. Stat. 1981, ch. 111⅔, par. 408.) This finding was affirmed by this court and the supreme court and is not open to dispute. (See *Serbian Eastern Orthodox Diocese v. Milivojevich* (1979), 74 Ill. 2d 574, 387 N.E.2d 285.) As such, the Commission's result was almost inevitable. It is difficult to perceive a line which is adequate for purposes of the Electric Supplier Act but which would not pass muster under the accepted engineering practices standard. We need not reach the issue of whether there are really two separate inquiries, however, because the Commission consistently and correctly found that CIPS' existing 34.5 KV line sufficed under both standards.

Similarly irrelevant to determination of the issues on this appeal is when the mine's first year of normal operations actually occurred and how much electricity the mine actually required during that period. On remand, the applicability of the exception to the parties' service area agreement was to be determined from the perspective of the

Commission at the time of its original hearing. Its decision was of necessity based on predictions. Its decision is binding and cannot be disturbed simply because the predictions were not totally accurate. (*Milivojevich.*) To do so would remove all finality from administrative decisions.

Affirmed.

GREEN, P. J., and TRAPP, J., concur.