SHIRLEY KINCAID, Plaintiff-Appellee and Cross-Appellant, v. AMES DEPARTMENT STORES, INC., d/b/a Zayre Illinois Corporation, *et al.*, Defendants-Appellants and Cross-Appellees.

First District (5th Division)   No. 1—94—3046

Opinion filed July 12, 1996.—Rehearing denied September 18, 1996.—Modified opinion filed September 20, 1996.

McNULTY, P.J., dissenting.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Richard J. Rettberg, Terry M. Lachcik, and Kristin L. Dvorsky, of counsel), for appellants.

Lonny Ben Ogus, of Chicago, for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Shirley Kincaid, sued her employer, Ames Department Stores (Ames), and two of Ames' security officers, Jerald Smith and Santos Cruz, for false arrest and malicious prosecution. A jury found for plaintiff on both counts, awarding compensatory damages of $75,700 against all defendants and punitive damages of $750 against Santos, $1,750 against Smith, and $250,000 against Ames. The trial court granted defendants' motion to reduce compensatory damages to $61,850, and defendants appeal from the denial of their motions for judgment *n.o.v.* or a new trial. Plaintiff cross-appeals the denial of her motion for fees as a sanction for a discovery violation.

We affirm the denial of plaintiff's motion for fees. We reverse the judgment against the defendants, and we remand for a new trial.

BACKGROUND

Plaintiff worked as an assistant manager in an Ames store at 10 West 63rd Street in Westmont, Illinois. In March 1989, Cruz was head of security for plaintiff's store. That month, Cruz received several anonymous phone calls in which he was told that people were stealing from the store. Following the second call, Cruz notified Smith, the district manager at plaintiff's store, and they began a

surveillance operation at the Ames store. On April 5, 1989, Smith and Cruz confronted two Ames employees—Ermine Jennings and Darryl Smallwood—who had taken merchandise from the store without a receipt. Both employees signed statements implicating the plaintiff, and she was arrested for theft on April 5, 1989.

On July 19, 1989, when plaintiff's case came up for trial, the State moved for a continuance because the police officer who arrested plaintiff was on vacation. The court granted a continuance until September 5, 1989. On that day, the State again moved for a continuance when only two of its four witnesses came to court. The court denied the motion, at which point the prosecutor stated:

> "Based on the witnesses I had, when they were interviewed in the office today, upon talking to them I find their testimony insufficient to proceed with the case. Based on that the State has a motion to nolle pros at this time."

The court allowed the *nolle prosequi* after confirming that the State would not refile any charges.

Plaintiff filed a complaint against the defendants on February 26, 1990, and filed her amended complaint on May 1, 1991. Count I of the amended complaint was for false arrest, and count II was for malicious prosecution. For both counts, plaintiff alleged, "Before her detention and arrest, Kincaid had done no criminal act nor did she do anything which would give any Defendant probable cause or legal justification to believe she had committed a criminal act."

The sheriff attempted to serve process on Smith three times in March 1990, noting that his apartment appeared vacant although his name still appeared on the bell. On May 25, 1990, Ames wrote a letter to plaintiff's counsel stating that Ames had entered into bankruptcy proceedings on April 25, 1990, and that the Bankruptcy Code automatically stayed all litigation from claims that arose before April 25, 1990. Ames further stated that violation of the stay could result in a civil contempt proceeding in bankruptcy court. On June 7, 1990, plaintiff wrote to Ames' bankruptcy counsel to ask if she could proceed against the other defendants, who were employees of the store. Ames talked with plaintiff, and plaintiff confirmed in a letter dated October 2, 1990, that Ames' position was that the codefendants were closely tied to it so that the stay also related to the codefendants such that plaintiff could not take any action against them.

On November 28, 1990, plaintiff persuaded the bankruptcy court to lift the automatic stay because Ames had insurance coverage for plaintiff's claim. Plaintiff filed a summons for Smith at his new address on December 12, 1991, and he was successfully served on January 4, 1992. Smith moved to dismiss the case pursuant to Supreme

Court Rule 103(b) (134 Ill. 2d R. 103(b)) for plaintiff's failure to render timely service, but the court denied the motion after finding that plaintiff's efforts to serve Smith showed due diligence.

On March 29, 1994, plaintiff and defendants went to New Mexico to take deposition testimony from Smith, who was suffering from dementia. Smith answered questions from defendants' counsel and was cross-examined, but Smith then refused to undergo a direct examination by the plaintiff. When Smith was too ill to appear at trial, the court barred defendants from reading their deposition testimony into the record. The court also denied plaintiff's motion to recover costs of her trip to New Mexico as a penalty for Smith's discovery violation.

On April 12, 1994, a jury trial began on the complaint. Officer Mark Malloy testified that on the night of April 5, 1989, he arrested plaintiff for theft. After he talked with Smith and Cruz, Officer Malloy charged plaintiff with stealing $600 worth of items found in Smallwood's trunk, including 17 cartons of cigarettes and five individual cigarette packages. Officer Malloy also talked with Smallwood and Jennings. Smallwood described how plaintiff had told him to take the items out to his car so that she could retrieve them later. Jennings told Officer Malloy that plaintiff had requested her to gather certain items and that those were some of the items found in Smallwood's trunk.

Christopher Pearce, a security officer at another Ames store, testified that on April 5, 1989, he had come to the Westmont Ames store to help Smith and Cruz with their surveillance. Pearce conducted undercover surveillance inside the store while Cruz and Smith watched from a van outside. Pearce saw plaintiff take cigarette cartons from the bargain aisle and put them behind the service desk in a cart, but he did not see her put them in a bag. Smallwood and Jennings later placed additional items in the same cart and took the cart outside. They placed the items in the trunk of a car, came back to the store, and then left again with one bag. At this point, Pearce followed Smallwood and Jennings outside and met up with Cruz in his van. They confronted Smallwood and Jennings and found that Jennings' bag contained blouses with no receipt. The security men then asked Smallwood to open up the trunk of his car. After taking the employees back into the store, Smallwood eventually said that plaintiff asked them to take the merchandise to his car. Pearce admitted that Ames' policy was to prosecute if a confession was not signed.

Terry Cole testified that she was an Ames employee working the night of April 5, 1989. She taped cigarette cartons with plaintiff that night. Later, Ms. Jennings came to her to exchange a blouse for an-

other of the same size. Ms. Cole needed a manager's approval for the exchange, but the even exchange did not require a receipt. Ms. Cole called plaintiff at another part of the store, and plaintiff approved the exchange.

Cruz testified that while watching from the van, he saw plaintiff take cigarette cartons and put them in a cart inside a plastic bag. Plaintiff then gave a small nod to Smallwood, who walked towards the cart and pushed it outside. Smallwood and Jennings took the cart's items to Smallwood's car, went back into the store and came out again. Cruz confronted them after Pearce came running out of the store, and Cruz waited until this time so that Pearce could tell him what had happened. After Cruz confronted Smallwood, Smallwood stated that Kincaid told him to take the stuff outside and put it inside his car. Cruz came with Pearce to plaintiff's trial, but the prosecutor told him that Smith was also an important witness.

Although Smith was too ill to testify, plaintiff read portions of Smith's deposition that defendants had admitted pursuant to a request to admit. Smith was in surveillance with Cruz in the van, and he observed plaintiff remove cartons from the rack and place them on the service desk, which was part of her job. Smith did not know if the cartons in Smallwood's trunk were the same ones that plaintiff placed in the cart, and plaintiff did nothing with merchandise other than cigarettes. Whether to prosecute an employee is influenced by his or her signing of a statement. Neither Smallwood nor Jennings implicated plaintiff on items besides cigarettes.

Smallwood testified that "someone" asked him to help take out the items in the cart. He often drove Jennings home, so it was not unusual for her to put items in his car. His job required him to check the items for a receipt before taking them from the store, but he neglected to do so. Plaintiff was standing at the customer service desk at the time, so he did not think there would be a problem. Besides the items from the cart, his car trunk also contained several personal items. Smallwood had many cartons of cigarettes because he sold them to a nursing home in the city after buying them for less in the suburbs. The security men confronted Smallwood and Jennings and began screaming and cussing at them both. He was then interrogated for over an hour while the men continued screaming and cursing at him. He wrote a report implicating plaintiff because the men told him to do so and that he would go to jail if he did not. Plaintiff never asked him to steal any items.

Plaintiff testified that she had been told that security surveillance would occur at the store that evening of April 5, 1989. Ms. Cole called her to approve an even exchange by Ms. Jennings of two

blouses, and plaintiff gave her approval. An even exchange did not require a receipt. She taped cigarette cartons that night but did not make any requests to either Smallwood or Jennings.

The statements by Jennings and Smallwood implicating plaintiff were admitted into evidence after Cruz stated that Jennings and Smallwood handed him the statements. Both statements said that plaintiff asked the employees to take items for her. Plaintiff objected to their introduction on the basis that Cruz was not in the room while the employees wrote their statements, but this objection was overruled.

Lastly, Jennings could not be located for deposition or trial. However, a retraction letter by Jennings was admitted into evidence in its entirety. Ames received the following letter from Jennings on April 22, 1989:

"On April 5, 1989, I was falsely accused of taking merchandise out of the store, without a receipt. However, it was an even receipt. With an even receipt, you don't need a receipt. Terry Cole will verify that it was an even exchange. However, I didn't get my four blouses back. Mr. Santos James, security guard of Westmont, said, 'I know that the items were Mrs. Kincaid. I'm out to get her, because I've been working on this investigation a long time. Now tell me how long it's been going on.' I told him I didn't know anything about it. He said, come on and cooperate with me. He wrote up a statement and had me rewrite it, accusing Mrs. Kincaid of stealing merchandise. Mr. Santos James wasn't even in the store and he didn't know what happened. Jerry, security at Joliet Zayre, was the only person in the store. If I was supposed to have stolen the blouses, why wasn't I arrested on the spot.

I'm totally innocent. *** I go over and beyond the call of duty and yet this happens. I feel that perhaps if everyone involved were not black, they would listen to us. I didn't know anything about what the security guard had in his car.

All I want back are my four blouses and my job, because I was falsely accused without probable cause."

The letter was signed by Jennings and dated April 11, 1989. Before trial, defendants had moved to bar introduction of the letter because it was hearsay. The court denied the motion on the grounds that the letter gave notice to defendants in their decision to continue the prosecution against plaintiff.

A jury found for plaintiff on both counts, awarding compensatory damages of $75,700 against all defendants and punitive damages of $750 against Santos, $1,750 against Smith, and $250,000 against Ames. The trial court reduced the compensatory damages to $61,850, the award for the malicious prosecution count alone, finding that the

damage elements from malicious prosecution included all those of false arrest.

In their appeal, defendants contend that the court erred by (1) not dismissing Smith because service on him was not timely; (2) not granting judgment *n.o.v.* because the evidence established that defendants had probable cause to arrest plaintiff; (3) committing several trial errors, including the admission of Jennings' letter into evidence; and (4) allowing a judgment that was excessive. Plaintiff's cross-appeal requests the costs she incurred in her New Mexico trip when she failed to fully depose Smith.

## OPINION

### I

■ Defendant Smith claims that the court erred by refusing to dismiss him from the case due to the lack of timely service against him. Supreme Court Rule 103(b) states: "If the plaintiff fails to exercise reasonable diligence to obtain service *** after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice." 134 Ill. 2d R. 103(b). Although each case must be decided on its own particular circumstances, factors a court may consider under Rule 103(b) include: (1) the amount of time taken to obtain service; (2) the efforts of the plaintiff; (3) plaintiff's knowledge of the defendant's location; (4) the ease with which defendant's location could have been determined; (5) actual knowledge by the defendant of the pendency of the action as a result of ineffective service; (6) special circumstances affecting plaintiff's efforts; and (7) actual service on defendant. *Tischer v. Jordan*, 269 Ill. App. 3d 301, 307, 645 N.E.2d 991 (1995); *Segal v. Sacco*, 136 Ill. 2d 282, 287, 555 N.E.2d 719 (1990). Dismissal under Rule 103(b) is within the sound discretion of the trial court, and the court's ruling will not be reversed absent an abuse of discretion. *Tischer*, 269 Ill. App. 3d at 307; *Segal*, 136 Ill. 2d at 286.

■ We believe that the trial court correctly concluded that the plaintiff acted with diligence in this matter. An immediate attempt to obtain service evinces diligence on the part of a plaintiff. *Brezinski v. Vohra*, 258 Ill. App. 3d 702, 705, 631 N.E.2d 345 (1994). In this case, as in *Brezinski*, plaintiff was not idly ignoring her case following the unsuccessful attempts. See *Brezinski*, 258 Ill. App. 3d at 705 (trial court abused discretion in dismissing when plaintiff demonstrated diligence). After her initial unsuccessful efforts, plaintiff was told by Ames that pursuing Smith could expose her to civil contempt. As soon as plaintiff resolved the matter in bankruptcy court, plaintiff

obtained service on Smith. We believe these facts constitute special circumstances as contemplated by the statute. In *Brezinski,* we held that special circumstances were present when the attorney handling plaintiff's case left a law firm, and the firm inadvertently failed to obtain service in the following months while operating shorthanded. *Brezinski,* 258 Ill. App. 3d 705. We find plaintiff's actions in this matter more justifiable than those found acceptable in *Brezinski,* and thus the trial court did not abuse its discretion by refusing to grant the motion to dismiss.

## II

■ Defendants contend that they are entitled to judgment *n.o.v.* because the evidence established that they had probable cause to arrest plaintiff and sign a criminal complaint. Judgment *n.o.v.* should be entered only in those cases in which all of the evidence, when viewed in the aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pasquale v. Speed Products Engineering,* 166 Ill. 2d 337, 351, 654 N.E.2d 1365 (1995). Further, judgment *n.o.v.* is improper where reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented. *Pasquale,* 166 Ill. 2d at 351.

■ In order to establish a malicious prosecution action, plaintiff must prove: (1) the commencement or continuation of a legal proceeding by the defendants; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. *Swick v. Liataud,* 169 Ill. 2d 504, 512, 662 N.E.2d 1238 (1996). Probable cause to arrest similarly defeats any claim for false arrest. *Lappin v. Costello,* 232 Ill. App. 3d 1033, 1042, 598 N.E.2d 311 (1992). A defendant has probable cause to arrest if, at the time of the arrest, after pursuing reasonable avenues of investigation, the defendant knew facts that would have led a person of ordinary prudence to entertain an honest and strong suspicion that the person arrested was guilty. *Lappin,* 232 Ill. App. 3d at 1042. Mere suspicion of guilt is not sufficient. *Lappin,* 232 Ill. App. 3d at 1044.

■ In this matter, taking the evidence in plaintiff's favor, the evidence establishes that plaintiff taped cartons of cigarettes and put them in a cart and that Jennings and Smallwood later put additional items in the same cart, which they took out of the store while plaintiff was nearby. The defendants admitted that taping cartons was part of plaintiff's job, and plaintiff may have been using the cart to later take the taped cartons back to the display rack. Although Cruz testi-

fied that he saw plaintiff put the cartons in a bag, his testimony was impeached by two facts: Smith did not see this while observing plaintiff from the same van, and Cruz testified that he waited to confront Jennings and Smallwood until Pearce came outside so that Pearce could tell Cruz what had happened. While it may be suspicious that plaintiff allowed the cigarettes to be taken away by someone else, the evidence does not establish that plaintiff necessarily noticed that Smallwood and Jennings were taking the cart. We do not believe these facts rise to the level of a strong suspicion, particularly when they occurred while plaintiff knew that the store was under surveillance.

Defendants rely on the written statements by Smallwood and Jennings to establish probable cause. However, defendants promised to let Smallwood and Jennings go free if they made their statements. Moreover, Smallwood's testimony and Jennings' letter both specifically detailed how defendants told them to accuse plaintiff in their statements, even though plaintiff had done nothing wrong. Sufficient reliability must support any statement used to help establish probable cause. *People v. James*, 118 Ill. 2d 214, 222, 514 N.E.2d 998 (1987). If a criminal suspect is offered leniency if he provides information against others, that information is clearly suspect because of the obvious motivation to shift blame to someone else. *James*, 118 Ill. 2d at 224. In this matter, the jury could have reasonably concluded that the statements had no indicia of reliability because they were just forced renditions of the defendants' own unwarranted beliefs towards plaintiff. The evidence presented in this case does not overwhelmingly favor the defendants and reasonable minds could differ on the facts presented, and thus the trial court properly denied defendants' motion for judgment *n.o.v.*

■ At oral argument, defendants also claimed that the recent supreme court case of *Swick* mandated judgment *n.o.v.* in their favor on the malicious prosecution charge. A malicious prosecution action cannot be predicated on underlying criminal proceedings that were terminated in a manner not indicative of the innocence of the accused. *Swick*, 169 Ill. 2d at 512. A *nolle prosequi* is not a final disposition of a case, but a procedure that reverts the matter to the same condition that existed before the commencement of the prosecution. *Swick*, 169 Ill. 2d at 512-13. The abandonment of proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of the impossibility or impracticability of bringing the accused to trial. *Swick*, 169 Ill. 2d at 513. The circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the prosecution. *Swick*, 169 Ill. 2d at 513-14.

■ In this case, the prosecutor did not merely ask for a *nolle prosequi* but promised not to refile the charges against plaintiff. Therefore, the *nolle prosequi* in this matter did not revert the case to the status it had before the commencement of the prosecution and was more strongly indicative of plaintiff's innocence. Moreover, the jury heard not only the criminal court's disposition of the case, but also the prosecutor's stated reasons for deciding not to prosecute. In particular, the jury heard that on review of the available witnesses, the prosecutor found the evidence insufficient to justify proceeding. The trial court here did not give any instructions inconsistent with the law as stated in *Swick*, and plaintiff reached no compromises and demanded trial consistently. The jury found that plaintiff met her burden of proving a termination of the criminal proceedings in her favor, and the evidence did not so overwhelmingly favor defendants that they were entitled to judgment *n.o.v.* on this issue.

### III

Defendants next argue that several trial errors, including the admission of Jennings' letter, require that we grant a new trial. We agree. The admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse of discretion. *People v. Miller*, 254 Ill. App. 3d 997, 1011, 626 N.E.2d 1350 (1993).

■ Examining Jennings' letter, we conclude that it was inadmissible. The hearsay rule prohibits introduction into evidence of an out-of-court statement offered to prove the truth of the matter asserted therein. *Kochan v. Owens-Corning Fiberglass Corp.*, 242 Ill. App. 3d 781, 806, 610 N.E.2d 683 (1993). When the statement is used for other purposes, such as impeachment or proof of notice, it is not hearsay. *Halleck v. Coastal Building Maintenance Co.*, 269 Ill. App. 3d 887, 891, 647 N.E.2d 618 (1995).

■ Plaintiff first contends that the letter was proper impeachment of hearsay evidence because the letter impeached Jennings' statement implicating plaintiff. However, Jennings' confession was not hearsay because it was not offered to prove the truth contained therein, but rather to show the confession gave defendants probable cause to arrest and prosecute plaintiff—the relevant issues in this matter. See *Baker v. City of Granite City*, 112 Ill. App. 3d 1096, 1100, 446 N.E.2d 531 (1983) (letter was not hearsay when relevant issues were actions made in reliance on letter). The truth of Jennings' confession would be material if this were a criminal prosecution of plaintiff and her guilt remained at issue, but the germane issue in this case is whether Jennings' confession gave defendants probable

cause and justified their actions *at the time of their actions.* As Jennings' confession was not material for its truth, Jennings' credibility was irrelevant and impeachment evidence would be improper. See *People v. Cooper*, 210 Ill. App. 3d 427, 440-41, 569 N.E.2d 144 (1991) (out-of-court statement was inadmissible as impeachment evidence when credibility of witness was irrelevant).

■ Plaintiff makes two arguments as to why the confession was offered for its truth. First, plaintiff argues that because the court did not give the jury a limiting instruction regarding its consideration of the confession, we must assume that defendants used the confession to prove the truth of its contents. However, because a court decides on jury instructions *after* all evidence has been presented, plaintiff's claim that a jury instruction could determine the allowance of impeachment evidence is backwards and illogical. Moreover, we do not believe a party need ever voluntarily restrict the parameters of its own evidence, much less do so to enable a judge to determine the relevancy of evidence that the opposing party wishes to present. See *Smith v. Black & Decker (U.S.), Inc.*, 272 Ill. App. 3d 451, 459, 650 N.E.2d 1108 (1995) (correspondence inadmissible because it failed to discredit witness on a material matter); *Eizerman v. Behn*, 9 Ill. App. 2d 263, 280, 132 N.E.2d 788 (1956) (opponent of evidence is responsible for jury instruction confining evidence to its legitimate sphere). Plaintiff provides no authority for her contention as to jury instructions, and we conclude that it has no merit.

Plaintiff's other argument is that defendants used the confession for its truth when they argued in their opening statement that Jennings signed a statement admitting her guilt. However, an accomplice's guilt or innocence is irrelevant and cannot be used as substantive evidence. *People v. Johnson*, 197 Ill. App. 3d 74, 83, 554 N.E.2d 696 (1990). In addition, even assuming *arguendo* plaintiff's claim were true, impeachment is not allowed on collateral matters that are irrelevant to establish a fact of consequence. *In re A.M.*, 274 Ill. App. 3d 702, 712-13, 653 N.E.2d 1294 (1995). As a present determination of Jennings' guilt is extraneous to this case, plaintiff could not offer impeachment evidence on this collateral matter.

Because Jennings' confession was not hearsay, plaintiff's citations to authorities allowing the impeachment of hearsay are inapposite. In *People v. Smith*, 127 Ill. App. 3d 622, 469 N.E.2d 634 (1984), we held that the court committed harmless error by not allowing impeachment of a hearsay statement that was admitted for the truth of its assertions under a hearsay exception. *Smith*, 127 Ill. App. 3d at 630. Thus, the hearsay statement in *Smith* is not analogous to this matter, and we further note that plaintiff incorrectly asserts that

*Smith* found reversible error. Federal Rule 806 also applies only to impeachment of hearsay statements admitted for the truth contained therein. Fed. R. Evid. 801, 806.

■ Plaintiff next argues that the letter gave defendants notice that it would be improper to continue their criminal proceedings. However, in her amended complaint, plaintiff never alleges that defendants harmed her by continuing the criminal proceedings. A plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in her complaint. *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 911, 629 N.E.2d 569 (1994). It is a fundamental rule, with no exceptions, that a party must recover on and according to the case she has made for herself by her pleadings. *Newton v. Aitken*, 260 Ill. App. 3d 717, 728, 633 N.E.2d 213 (1994) (plaintiff waived issues not presented in complaint). Plaintiff's complaint contains no allegations of any acts by the defendants that took place after April 7, 1989, and, thus, the letter, which arrived on April 22, 1989, is immaterial to support any allegations in the complaint and could not be admitted on grounds of notice.

■ Plaintiff contends that she pleaded tortious conduct occurring after the letter's arrival because she alleged damages that occurred after April 22, 1989. Plaintiff claims that these allegations of additional damages implicitly required further tortious conduct by the defendants. However, there is no such correlation; a single tortious act can continue to cause damages months and years after the initial occurrence without any additional tortious conduct. Plaintiff also cites her allegation of the *nolle prosequi* by the State, but plaintiff fails to explain how this constitutes or alleges a tortious act by defendants.

Plaintiff also contends that our decision ignores the doctrine of "aider of verdict" in which a defendant waives all technical defects in a complaint if an action proceeds to verdict. See *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 645 N.E.2d 88 (1994). However, this doctrine applies only when a defective complaint fails to allege facts essential to support the verdict rendered. See *Adcock*, 164 Ill. 2d at 61. In the instant case, the error was not that the complaint was inherently defective, but that the court allowed evidence that was prejudicial and irrelevant to any allegations in the complaint.

■ Plaintiff next claims that any deficiencies in the complaint could have been cured, citing *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6, 605 N.E.2d 544 (1992). However, *Cirro* held that the trial court erred by not allowing the plaintiffs' request to amend their pleadings during trial, and, thus, *Cirro* is inapposite as plaintiff never moved to

amend. See *Cirro*, 153 Ill. 2d at 24-25. Defendants satisfied their obligations when they objected to the irrelevant evidence on proper grounds when the evidence was first presented. See *Continental Concrete Pipe Corp. v. Century Road Builders, Inc.*, 195 Ill. App. 3d 1, 14, 522 N.E.2d 1032 (1990) (waiver occurs when party fails to object to introduction of evidence on unpleaded theory).

In addition, we note that errors occurred even if the letter had given defendants notice of a material issue. Several highly prejudicial statements in the letter—such as "I feel that perhaps if everyone involved were not black, they would listen to us"—could not have given defendants notice of anything. These statements should have been redacted even under the court's ruling. Lastly, the court did not issue a cautionary instruction that the letter was not to be used for substantive evidence as to what occurred.

■ Because Jennings' letter was prejudicial hearsay inadmissible under any hearsay exception, we conclude that the court abused its discretion by admitting the letter into evidence. When evidence is improperly admitted, a jury verdict must be reversed when the error is prejudicial and the evidence is closely balanced. *Alvarado v. Goepp*, 278 Ill. App. 3d 494, 497, 663 N.E.2d 63 (1996). In this matter, defendants presented evidence that plaintiff put cigarettes in a cart that Smallwood and Jennings almost immediately took to Smallwood's car, following which Smallwood and Jennings both implicated plaintiff as a partner in stealing the cigarettes. This evidence was more than necessary to demonstrate probable cause for arrest and prosecution, and, thus, this case was closely balanced. Although plaintiff claims that we must examine the effect of the error by viewing all evidence in the light most favorable to the verdict, plaintiff cites inapposite cases such as *Herst v. Chark*, 219 Ill. App. 3d 690, 579 N.E.2d 990 (1991), that reviewed decisions where no evidence was improperly admitted.

Because of our conclusion that a new trial is required, we need not examine the other trial errors alleged by defendants or their claim that the jury's award was excessive. As a final matter, we note that even if plaintiff chooses to amend her complaint on remand, admission of any part of Jennings' letter is not automatic. Although plaintiff argues that defendants should have discontinued plaintiff's prosecution upon receipt of the letter, the letter dealt mostly with Jennings herself and its probative value is limited. Therefore, the trial court should carefully consider whether admission of any portion of the letter is justified and outweighs the prejudice involved. See *Ryan v. Mobil Oil Corp.*, 157 Ill. App. 3d 1069, 1082, 510 N.E.2d 1162 (1987) (excluding prejudicial letter with bald accusations and minimal probative value was within trial court's discretion).

## IV

■ Addressing plaintiff's cross-appeal, plaintiff contends that defendants should have paid the costs of her trip to New Mexico to take Smith's deposition—$3,801.92. Plaintiff argues that Smith's refusal to allow examination by plaintiff's lawyer was a violation of discovery rules that should have been sanctioned under Rule 219 (134 Ill. 2d R. 219), and that "to deny sanctions rewards violations of the rules." However, we do not believe the other defendants were rewarded in this matter. The court barred their use of deposition testimony from Smith while allowing plaintiff to use selected portions of the testimony through her request to admit. Thus, the New Mexico trip may have been of greater benefit to plaintiff than defendants. The trial court did not abuse its discretion by refusing to award the plaintiff these costs. Plaintiff's notice of cross-appeal also appeals the court's reduction of the award of compensatory damages. Even if this issue was not rendered moot by our remand, issues raised in the notice of appeal, but not raised or argued before the appellate court, are deemed waived. *Khan v. American Airlines*, 266 Ill. App. 3d 726, 733, 639 N.E.2d 210 (1994).

For the foregoing reasons, the judgment of the trial court is reversed and set aside, and the cause is remanded for further proceedings in accordance herewith.

Affirmed in part and reversed in part; cause remanded.

HOURIHANE, J., concurs.

PRESIDING JUSTICE McNULTY, dissenting:

I dissent from the decision to reverse and remand, reached in part III of the majority opinion.

The parties to this appeal may have considerable difficulty recognizing the case they presented at trial and argued on appeal from the decision of the majority. While defendants' insurer may be delighted by the surprising arguments the majority formulates on its behalf, the alterations in the case unjustly deprive plaintiff of the verdict she properly won on the arguments raised at trial.

The majority finds that Jennings' statement implicating plaintiff was not admitted for the truth of the matter asserted therein. This finding must surprise defendants, who in closing argument at trial relied on the statement as substantive evidence providing important corroboration for Cruz' well-impeached testimony. The majority ignores this substantive use of Jennings' statements to establish the facts most significant for defendants' case. Even in arguing the mo-

tion to exclude Jennings' letter, defendants never suggested that her statements had not been admitted for the truth of their assertions. Neither party sought any instruction limiting the jury's consideration of the statements, and the trial court accordingly treated them as substantive evidence of the matters asserted therein.

Moreover, defendants also introduced Officer Malloy's testimony concerning statements Jennings made to him. No evidence showed that defendants learned of those statements prior to prosecuting plaintiff, so those statements cannot be admissible as proof of defendants' probable cause to prosecute. While Malloy's testimony might have some non-hearsay purpose in a criminal prosecution, in this case they are relevant only for the truth of Jennings' assertions concerning plaintiff's alleged acts.

Jennings' statements implicating plaintiff were hearsay statements of an absent declarant, admitted for the truth of the matters stated therein. As the majority now concedes in the modified opinion, such evidence is subject to impeachment by out-of-court statements contradicting the admissible hearsay. "Where a statement of an absent declarant is properly admitted into evidence under one of the hearsay exceptions, the opposing party may impeach such statement with a prior inconsistent statement by the declarant." *People v. Smith*, 127 Ill. App. 3d 622, 630, 469 N.E.2d 634 (1984). A subsequent inconsistent statement may also impeach admissible hearsay, and the hearsay so impeached need not qualify as testimony. *People v. Johnson*, 271 Ill. App. 3d 962, 965, 650 N.E.2d 1 (1995). Illinois law on this issue accords with Rule 806 of the Federal Rules of Evidence. *Smith*, 127 Ill. App. 3d at 630. As the commentators to that rule observed:

> "The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified. ***
>
> *** [I]n the case of hearsay the inconsistent statement may well be a *subsequent* one ***." (Emphasis in original.) Fed. R. Evid. 806, Advisory Committee's Note.

Therefore, Jennings' letter was admissible for the nonhearsay purpose of impeaching her written statement and her statements to Malloy, both of which provided crucial supports for defendants' case. See *Frisch v. International Harvester Co.*, 33 Ill. App. 3d 507, 517, 338 N.E.2d 90 (1975). This issue alone, without reference to plaintiff's notice argument, provides grounds for affirming the trial court's decision to admit the letter into evidence.

Next the majority finds that plaintiff's complaint did not

adequately place in issue defendants' conduct after April 7, 1989, in continuing the legal proceedings against plaintiff. In the amended complaint plaintiff alleged that "[a]s a direct result of the acts of Ames *** and its agents, [plaintiff] hired an attorney to represent her on the criminal charges" and she "appeared in court on approximately four (4) separate occasions." At least three of the four appearances came after April 7, 1989. The parties and the trial court showed that they understood that the complaint adequately placed in issue defendants' conduct in continuing the prosecution after April 11, 1989, when Jennings wrote her letter retracting her prior written statement. Defendants made no mention of the pleadings in their motion *in limine* to bar the letter from evidence. At argument on the motion the court said it was not hearsay because "it is used as part of the information that the defendant[s] ha[d] when they decided to go for prosecution." At this point defendants had the opportunity and the obligation to raise any issue which might form a basis for challenging the court's ruling. See *Hall v. National Freight, Inc.*, 264 Ill. App. 3d 412, 419-20, 636 N.E.2d 791 (1994). Defendants did not object that the letter came too late, or that the pleadings were inadequate to raise the issue.

Any objection to a variance between the pleadings and the proof must be made to the trial court (*Nikolopulos v. Balourdos*, 245 Ill. App. 3d 71, 76, 614 N.E.2d 412 (1993)) to give the proponent of the evidence an opportunity to cure the defect (*Sundstrom v. Village of Oak Park*, 374 Ill. 632, 640, 30 N.E.2d 58 (1940); *Janisco v. Kozloski*, 261 Ill. App. 3d 963, 966, 634 N.E.2d 1104 (1994)), and thereby save the courts the expense of a retrial or other waste of judicial resources (*Certain Underwriters at Lloyd's, London v. Bertrand Goldberg Associates, Inc.*, 238 Ill. App. 3d 692, 697, 606 N.E.2d 541 (1992)). The majority's strained construction of defendant's objection must fail. The hearsay objection to the evidence in no way placed before the court any issue concerning the adequacy of the pleading. Plaintiff could have cured any perceived deficiency in her pleading before trial if defendants ever suggested that she had not properly alleged that they tortiously continued prosecution in the face of evidence of her innocence. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6, 24-25, 605 N.E.2d 544 (1992). Because the letter showed that when defendants continued prosecution they had notice that the evidence on which they based the decision to prosecute was false, the letter is admissible for a nonhearsay purpose. See *Kochan*, 242 Ill. App. 3d at 806. The trial court did not abuse its discretion by denying the motion *in limine*.

The majority, apparently recognizing the weakness of its other

arguments, further decides, without citation to authority, that the trial court committed reversible error by failing to redact objectionable statements from the letter and by failing to issue a cautionary instruction concerning use of the letter. Defendants have not raised either argument in the trial court or on appeal. Defendants made a tactical decision not to seek redaction or a limiting instruction after the trial court denied their motion *in limine*. If the trial court had redacted the document or given the limiting instruction *sua sponte*, the court would have committed reversible error by becoming an advocate for the defense. See *Yetton v. Henderson*, 190 Ill. App. 3d 973, 980, 546 N.E.2d 1000 (1989). The court's failure to commit such an intrusion into the parties' tactics, and its acceptance of defense counsel's tactical decision to waive the issue, cannot constitute an abuse of discretion warranting reversal. See *Netto v. Goldenberg*, 266 Ill. App. 3d 174, 178-79, 640 N.E.2d 948 (1994).

Although I agree with the holding that the trial court correctly denied judgment notwithstanding the verdict, the facts stated in the majority opinion do not present the evidence in the light most favorable to the verdict. For example, plaintiff presented substantial evidence that neither she, nor Jennings, nor Smallwood, committed any violation of Ames' rules or attempted to take any merchandise without proper payment, and defendants knew, or could easily have discovered, that plaintiff's actions entirely accorded with store policy. Also, the majority misstates the evidence in asserting that the written statements allegedly taken from Smallwood and Jennings implicated plaintiff in taking cigarettes. The statements pertained solely to the blouses, giving further indication that by the time they took those statements Cruz and Smith were well aware that they had no basis for charging anyone with taking cigarettes or other merchandise. Slight investigation into store policy would have revealed that Jennings could properly have the blouses without a receipt, as a result of an even exchange.

The majority's decision imposes upon the State of Illinois the expense of a second lengthy trial on the basis of the adequacy of the pleadings and the need for instructions limiting the use of the admissible hearsay, although defendants never raised either issue. In the decision, the majority assumes the role of advocate for defendants and the result is nothing less than welfare for the insurer. If the supreme court chooses to review this case, I suggest that there is no need to remand to this court for further consideration of issues the majority refused to decide. The majority opinion should be reversed, and the trial court's judgment should be reinstated in its entirety. Accordingly, I dissent.