Eugene **NEAL**, Plaintiff,

v.

**CITY OF HARVEY, ILLINOIS;** David Johnson; et al., Defendants.

No. 96 C 1464.

United States District Court, N.D. Illinois, Eastern Division.

March 30, 1998.

852

Michelle M. Klute, Kenneth J. Wysoglad & Associates, Chicago, IL, David A. Blutcher, Chicago, IL, Stuart Joseph Bobrow, Law Offices of Stuart J. Bobrow & Associates, Chicago, IL, for Eugene Neal.

John A. Hiskes, Timothy Charles Lapp, Buikema, Hiskes, Dillner, O'Donnell & Marovich Ltd., South Holland, IL, Michael Jay Marovich, Hiskes, Dillner, O'Donnel & Marovich, Ltd., Orland Park, IL, for City of Harvey, Illinois.

John A. Hiskes, Timothy Charles Lapp, James D. Montgomery, John Gergets, James D. Montgomery & Associates, Ltd., Chicago, IL, Michael Jay Marovich, Hiskes, Dillner, O'Donnel & Marovich, Ltd., Orland Park, IL, for David Johnson.

John A. Hiskes, Timothy Charles Lapp, Stephen Aron Glickman, Stephen A. Glickman, P.C., Chicago, IL, Michael Jay Marovich, Hiskes, Dillner, O'Donnel & Marovich, Ltd., Orland Park, IL, for Ronnie Burg.

John A. Hiskes, Timothy Charles Lapp, Ronald Kawanna, Jr., Lawrence P. Gulotta, Gulotta & Kawanna, Calumet City, IL, Michael Jay Marovich, Hiskes, Dillner, O'Donnel & Marovich, Ltd., Orland Park, IL, for Lawrence Patterson, Ron Cross, Bryan Patterson.

John A. Hiskes, Timothy Charles Lapp, Michael Jay Marovich, Hiskes, Dillner, O'Donnel & Marovich, Ltd., Orland Park, IL, for Art Nealy.

Ronald Kawanna, Jr., Edward A. Antonietti, Lawrence P. Gulotta, Gulotta & Kawanna, Calumet City, IL, for James McGee.

Linda L. Listrom, Jenner & Block, Chicago, IL, for Sylvia Gomez.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Eugene Neal, brought suit alleging constitutional violations and state law claims arising out of his arrest as a suspect in the shooting of a Harvey police officer. The defendants, the City of Harvey and various Harvey police officers, move for summary judgment on all of Mr. Neal's claims. For the following reasons, the defendants' motion is granted in part and denied in part.

### Background

On the evening of March, 15, 1995, Officer Jerald Lewis was shot in the back and ear by an assailant he was pursuing on foot. Earlier in the day, Harvey police officers had accompanied a city inspector to the Pro Detail Shop to aid in serving an ordinance violation for operating a business without a license. While at the shop, the police officers encountered two suspended Harvey police officers and Mr. Neal. Mr. Neal is well known to Harvey police. He is a convicted felon who had been previously arrested for the attempted murder of a Harvey police officer. Although there is some disagreement as to who said what, it is undisputed that Mr. Neal's group made threats against the lives of Harvey police officers. Mr. Neal's group also suggested they make a phony call to the police and then ambush the police. These threats were immediately reported to the Harvey Chief of Police, Ronnie Burge, and written reports documenting the threats were produced.

Later in the evening, Officer Lewis responded to a call reporting a disturbance. Upon arriving at the scene, several subjects fled and Officer Lewis chased one individual. After nearly catching the subject, the individual turned, faced Officer Lewis, and pulled a

gun from his waistband. Officer Lewis retreated, but was shot in the back. Officer Lewis rolled over, only to find the individual standing over him. The individual fired another shot at Officer Lewis and then fled. The bullet struck Officer Lewis in the ear. Officer Lewis radioed that he had been shot and drove himself to the hospital.

That evening, while in the hospital, Officer Lewis described the offender as being a black male, wearing a black and red jacket, approximately six feet tall, and about one hundred and ninety pounds. Officer Lewis was shown a variety of photographs while in the emergency room, but could not identify the shooter. At that time, Mr. Neal's photograph was not among those shown to Officer Lewis. According to the defendants, based on threats to Harvey police officers, the close proximity between the threats and the shooting, and Mr. Neal's criminal history, Mr. Neal became a suspect in the shooting.

The events of the following morning are disputed. It appears that Chief of Police Burge took a photograph of Mr. Neal to the hospital. At that time, Officer Lewis identified Mr. Neal as his attacker. No other pictures were shown to Officer Lewis. Soon after, and upon the request of Chief of Police Burge, Officer Lawrence Patterson returned to the hospital with a photo array, including a picture of Mr. Neal. Again, Officer Lewis picked out the photograph of Mr. Neal as his assailant. Mr. Neal argues that Officer Patterson did not show Officer Lewis a photo array, but simply another picture of Mr. Neal. Regardless of what occurred, Officer Patterson returned to the police station and informed Chief of Police Burge that Officer Lewis had again identified Mr. Neal as the shooter.

Chief of Police Burge informed all department chiefs they were to find Mr. Neal and take him into custody as a suspect in the shooting of Officer Lewis. Consequently, Mr. Neal was arrested around noon on March 16, 1995. While in custody, Mr. Neal was searched and a white substance was found on his person. There is a dispute as to how many times Mr. Neal was searched before the substance was discovered and where the substance was actually found. Mr. Neal was booked for attempted murder and possession of a controlled substance.

As it turns out, Mr. Neal had an iron-clad alibi. At the time of the shooting, he was at the campaign headquarters of Nick Graves, a Harvey mayoral candidate. Additionally, there is evidence that indicates that shortly after Mr. Neal's arrest, Chief of Police Burge was told by a Harvey police officer that a street informant knew that Mr. Neal was not the shooter and named the actual assailant. Mr. Neal, while nearly six feet tall, weighs approximately 135 pounds, a full fifty pounds less than the description provided by Officer Lewis. Still, after Mr. Neal was taken into custody, Office Lewis again identified him in a photo array and a police line-up.

Mr. Neal was released after a few days in custody. He was never officially charged with the attempted murder of Officer Lewis. The narcotics charge was dropped after it was determined the white substance found on Mr. Neal was not a controlled substance. Based on his arrest and detention, Mr. Neal brought the suit now before me.

*Section 1983 & Qualified Immunity*[1]

Mr. Neal charges Chief of Police Burge and Officers Lawrence Patterson, Bryan Patterson, and James McGee with violating his Fourth Amendment rights under 42 U.S.C. § 1983.[2] The defendants argue they are shielded from suit by qualified immunity. Qualified immunity protects government

---

1. As the defendants have noted, Mr. Neal does not specifically respond to their argument that they are protected by qualified immunity. By failing to respond to the argument, it is possible Mr. Neal has conceded the point. *Industrial Specialty Chem. v. Cummins Engine Co., Inc.*, 918 F.Supp. 1173, 1180 (N.D.Ill.1996). But, since the propriety of qualified immunity is dependent on whether probable cause existed for Mr. Neal's arrest and since Mr. Neal has argued probable cause did not exist, I find Mr. Neal has implicitly responded to the defendant's argument.

2. Mr. Neal admits Officer Ron Cross was not involved in any way in his arrest. Thus, summary judgment on counts 11, 12, and 13 is entered in his favor. It appears that Officer Art Nealy was never served and has not appeared in this case. Thus, he is not involved in the present motion.

employees from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In the Fourth Amendment context, the issue is whether a reasonable officer could have believed probable cause existed to arrest the plaintiff given the specific circumstances with which the defendants were confronted. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Supreme Court has noted that qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law ... [and] if officers of reasonable competence could disagree on [the probable cause] issue, immunity should be recognized." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Thus, the Supreme Court has found that "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Anderson,* 483 U.S. at 641).

"Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." *Hughes v. Meyer,* 880 F.2d 967, 969 (7th Cir.1989). As the Seventh Circuit has noted, "[p]robable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Id.* "[P]robable cause depends not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer*—seeing what he saw, hearing what he heard." *Mahoney v. Kesery,* 976 F.2d 1054, 1057 (7th Cir.1992) (emphasis in original).

## A. Attempted Murder

At the time of Mr. Neal's arrest for the attempted murder of Officer Lewis, the Har-vey police had sufficient evidence to find probable cause. Hours before the shooting of Officer Lewis, Mr. Neal was part of a group of men that threatened to ambush and shoot a Harvey police officer. Mr. Neal was a known felon who had been previously arrested for the attempted murder of a Harvey police officer. After the shooting, Officer Lewis twice identified pictures of Mr. Neal as his assailant. *See Jones v. City of Chicago,* 856 F.2d 985, 995 (7th Cir.1988) (finding that the identification of an assailant by a lucid victim would suffice to produce probable cause for arrest).

Mr. Neal argues that Officer Lewis' identification was unduly suggestive and should not be used to determine if probable cause existed. Mr. Neal correctly notes that "identifications arising from single-photograph displays may be viewed in general with suspicion." *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *see also United States v. Rutledge,* 40 F.3d 879, 889 (7th Cir.1994) (finding a single photograph identification unduly suggestive), *rev'd on other grounds,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). An unduly suggestive photospread may not be used to establish probable cause. *Yattoni v. Oakbrook Terrace,* 801 F.Supp. 140 (N.D.Ill. 1992), *aff'd,* 14 F.3d 605 (7th Cir.1993). In *Yattoni,* Judge Shadur found that an "unduly suggestive lineup or photospread may confirm the police's prior suspicions about a person, but it is not likely to provide an unbiased reflection of the witness's personal knowledge." *Id.* at 147. Probable cause cannot be based on such an identification because "the police cannot claim to have learned anything from a selection foreordained by their own conduct." *Id.*

There is, however, an exception to the rule prohibiting the use of an unduly suggestive identification to establish probable cause. An unduly suggestive identification may still establish probable cause if, given the totality of the circumstances, the identification was reliable. *United States ex. rel. Hudson v. Brierton,* 699 F.2d 917, 923–24 (7th Cir.1983). Factors to be considered when determining whether an identification

is reliable are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

The *Yattoni* case, because of its similarity to Mr. Neal's case, provides an enlightening application of the *Biggers* factors. In *Yattoni*, a woman was robbed at knifepoint in the parking lot of a department store. The crime occurred at night, and the robber approached the woman from the rear while she placed a baby in a carseat. After the woman put the baby down the robber grabbed a purse and fled. *Yattoni*, 801 F.Supp. at 142. The woman saw the robber's face during part of the robbery. The woman was interviewed by police shortly after the robbery and again the following day, giving descriptions of the robber on both occasions. The second description varied from the first in that the woman described her assailant as younger and slimmer than she had originally stated. On neither occasion did the woman describe the robber's face. Two days later the woman helped prepare a sketch of the robber and again her description changed slightly. Two weeks later the woman tentatively identified Yattoni from a photospread. Yattoni, who was ultimately arrested for the crime, weighed thirty pounds less than the suspect the woman described and was shorter than the woman's description. *Id.*

The *Yattoni* court found that, given the totality of the circumstances, the woman's identification was reliable. *Id.* at 148. The court noted the woman was under stress at the time of the robbery, changed her description twice, and that none of the descriptions the woman offered were a precise resemblance of Yattoni. But the court found the woman had an opportunity to look the robber full in the face and was not a casual observer, but the victim of a violent crime, a significant factor under the *Biggers* analysis. *Id.* While the woman's description of the suspect varied from Yattoni's physical characteristics in both weight and height, the court found the descriptions were roughly correct, which is all that is required under *Biggers*. *Id.*

■ Like the court in *Yattoni*, I find the totality of the circumstances indicates Officer Lewis' identification was reliable. Although the confrontation was brief and the alley where the shooting occurred only partially lit, Officer Lewis was merely an arm's length away from the suspect when he looked into his face. Officer Lewis was not a casual observer, but a police officer chasing a suspect. Officer Lewis' description of his assailant did not precisely match Mr. Neal, but was roughly correct, differing only in weight. Further, Officer Lewis, when shown pictures of possible suspects on the night of the shooting, did not misidentify a suspect, but stated that none of those pictured were his assailant. Only the following morning, still within a day of the shooting, when first shown a picture of Mr. Neal, did Officer Lewis positively identify him as the shooter. Mr. Neal has presented no evidence that Officer Lewis was coerced or bullied into identifying Mr. Neal. In sum, "[t]here is no evidence to suggest that [Officer Lewis] was so utterly distraught, so unable to observe or communicate, that the police acted unreasonably when they trusted [his] identification." *Yattoni*, 801 F.Supp. at 149.

Mr. Neal argues that Officer Lewis' description of the assailant does not match him because there is a fifty pound weight difference and Mr. Neal has a distinctive "Fu Manchu" moustache. As an initial matter, Mr. Neal has presented absolutely no evidence that he, in fact, has a "Fu Manchu" moustache or that he had the moustache on the night of the shooting. In his brief, Mr. Neal simply alleges the existence of the moustache without citing any supporting materials. Additionally, Officer Lewis gave no facial description of his assailant. The description simply involved weight, height, and clothing. It is not as though Officer Lewis described numerous facial features, but neglected to mention a moustache. As for the weight differential, Mr. Neal again fails to back this claim with supporting evidence. Regardless, Officer Lewis made a photo identification of facial shots, and thus, body weight would not have been a factor. As the

*Yattoni* court noted, rough accuracy of description is all that is required under *Biggers*. I find such accuracy present here.

Given the totality of the evidence, I believe an objective police officer with the same information as the Harvey police could have reasonably believed probable cause existed to arrest Mr. Neal for the attempted murder of Officer Lewis. Accordingly, the defendants are protected by qualified immunity against Mr. Neal's Section 1983 claim arising from the arrest of Mr. Neal for the attempted murder of Officer Lewis.

### B. Possession of a Controlled Substance

Mr. Neal also argues the defendants did not have probable cause to arrest him for possession of a controlled substance. Mr. Neal states that the substance found by police officers was actually planted on him after he had been searched three times. The defendants, Chief of Police Burge and Officers Bryan Patterson, Lawrence Patterson, and James McGee, argue they are entitled to qualified immunity on this claim.

As noted above, the defendants will be protected by qualified immunity if a reasonable officer would have believed probable cause existed to arrest Mr. Neal for possession of a controlled substance. Plainly, the issue revolves around whether the substance found by Officer Bryan Patterson on Mr. Neal was actually planted. If it was, no reasonable officer could find probable cause existed for Mr. Neal's arrest. If, however, the substance was not planted, probable cause did exist and the defendants will be protected by qualified immunity.

■ Mr. Neal states, and the defendants do not deny, that he was searched three times. The degree, thoroughness, and manner of these searches is unknown. The defendants argue that Mr. Neal was *charged* with possession of a controlled substance after he was searched three times, not that the drugs were necessarily found after the third search. There is a genuine issue of fact as to when the substance was found. Taking the evidence in the light most favorable to Mr. Neal, it does appear suspicious that a controlled substance, supposedly hidden in a medicine bottle, was only detected by police after searching Mr. Neal, who was in custody for attempted murder, three times.

Officer Bryan Patterson allegedly found the substance. But, his reports memorializing his discovery are internally inconsistent. On the day of the arrest, Officer Bryan Patterson reports that he removed the substance from Mr. Neal's jacket pocket. (Def.Exs. H & I). Officer McGee testified Officer Bryan Patterson informed him that the substance was found in a jacket pocket during a patdown search. Yet, in an intra departmental communication written the next day, Officer Bryan Patterson reports that Mr. Neal personally removed the medicine bottle from his jacket and threw it into the garbage. Officer Bryan Patterson then retrieved the medicine bottle from the garbage and found the substance. (Def.Ex.J). Also, the first report indicates Mr. Neal had ten clear plastic bags with ten off-white rock substances, while the second report indicates only eight chunks were found. Further, Officer McGee testified Officer Bryan Patterson informed him a white powdery substance was found on Mr. Neal. Officer Bryan Patterson, however, reported the substance was rock-like.

Given the totality of the evidence, I believe there is a genuine issue of fact as to whether the substance was planted on Mr. Neal. Officer Bryan Patterson's motion for summary judgment is therefore denied.

■ Mr. Neal has an additional hurdle to overcome to prove a Section 1983 claim against Officer Bryan Patterson's supervisors, Chief of Police Burge and Officers Lawrence Patterson and James McGee. Mr. Neal must show the supervisors were personally involved in the conduct that led to his arrest for possession of a controlled substance. "[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988). Supervisors must "act either knowingly or with deliberate, reckless indifference." *Id.* at 992–93.

■ Mr. Neal offers no evidence against Officer Lawrence Patterson other than a one sentence deposition answer given by Officer

Lawrence Patterson stating he was informed by Officer Bryan Patterson that a controlled substance was found on Mr. Neal. (Lawrence Patterson Dep. at 68). This is insufficient to prove that Officer Lawrence Patterson knew or should have known that Officer Bryan Patterson planted narcotics on Mr. Neal. Accordingly, Officer Lawrence Patterson is entitled to summary judgment on Mr. Neal's Section 1983 claim.

■ Similarly, the only evidence Mr. Neal presents that Chief of Police Burge was involved in his arrest for possession of a controlled substance is his own deposition testimony stating a county sheriff informed him Chief of Police Burge was sending over Officer McGee to take the charges and do the paperwork on the possession charge. (Neal Dep. at 180–81). Even if true, this evidence is insufficient to show Chief of Police Burge knew or should have known Officer Bryan Patterson planted narcotics on Mr. Neal. Thus, Chief of Police Burge is also entitled to summary judgment on Mr. Neal's Section 1983 claim.

■ Officer McGee interviewed Officer Bryan Patterson, prepared a report on the possession charge, and executed the criminal complaint against Mr. Neal. According to Officer McGee, as primary investigating officer, it was standard procedure for him to execute the complaint. As the primary investigating officer, Officer McGee presumably saw the reports that Officer Bryan Patterson completed regarding the possession incident. The inconsistencies between the reports are conspicuous and it is not unreasonable to expect a seasoned policeman such as Officer McGee to have noticed the discrepancies. There is a genuine issue of fact as to whether Officer McGee turned a blind eye to Officer Bryan Patterson's possible misconduct. Thus, Officer McGee's motion for summary judgment is denied.

### State Law Claims

#### A. False Arrest and Imprisonment

■ Chief of Police Burge, Officers McGee, Bryan Patterson, Lawrence Patterson, and the City of Harvey move for summary judgment on Mr. Neal's claims for false

arrest and false imprisonment. "[F]alse arrest is the unlawful restraint of an individual's personal liberty." *Meerbrey v. Marshall Field & Co.*, 189 Ill.App.3d 1085, 545 N.E.2d 952, 955, 137 Ill.Dec. 191, 194 (1st Dist.1989). To prove false imprisonment, "a plaintiff must show that the restraint was unreasonable or without probable cause." *Martel Enter. v. City of Chicago*, 223 Ill.App.3d 1028, 164 Ill.Dec. 945, 949, 584 N.E.2d 157, 161 (1st Dist.1991). Probable cause is an absolute bar to claims for false arrest and false imprisonment. *Lappin v. Costello*, 232 Ill. App.3d 1033, 174 Ill.Dec. 114, 120, 598 N.E.2d 311, 317 (4th Dist.1992); *Martel Enter.*, 584 N.E.2d at 161, 164 Ill.Dec. at 949. The defendants base their entire motion for summary judgment on the fact there was probable cause to arrest Mr. Neal for the attempted murder of Officer Lewis. To the extent Mr. Neal bases his false arrest and false imprisonment claims on his arrest for attempted murder, they are barred, as I have found probable cause did exist for Mr. Neal's arrest.

But since I have found a genuine issue of fact exists as to the probable cause to arrest Mr. Neal for possession of a controlled substance, his claims for false arrest and false imprisonment on this ground may proceed against Officer Bryan Patterson. The defendants do not address this issue except to invoke the Illinois Local Governmental and Governmental Employees Tort Immunity Act. 745 ILCS 10/1–101 *et seq.* Two provisions of the Tort Immunity Act are relevant here. Under Section 2–202, "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 TLCS 10/2–202. Under section 2–208, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause." 745 ILCS 10/2–208.

■ Mr. Neal has presented no evidence that either Chief of Police Burge or Officer Lawrence Patterson acted with willful and wanton intent or maliciously. Thus, they are protected by the Tort Immunity Act.

Additionally, while Officer McGee may have acted with reckless indifference, Mr. Neal has not presented evidence that his conduct was malicious and thus, Officer McGee is also protected by the Tort Immunity Act. Officer Bryan Patterson, if he did plant a substance on Mr. Neal, clearly acted with maliciousness and without probable cause. Accordingly, the Tort Immunity Act will not protect him. The City of Harvey has based its entire motion on summary judgment on the presumption that none of the officers will be liable to Mr. Neal and thus, the City of Harvey will not be liable to Mr. Neal.[3] Since Officer Bryan Patterson may be liable to Mr. Neal, the City of Harvey's motion for summary judgment on this claim necessarily fails.

### B. Malicious Prosecution

 Mr. Neal charges the same defendants with malicious prosecution. To establish malicious prosecution, Mr. Neal must prove: "(1) the commencement or continuation of a legal proceeding by the defendants; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Kincaid v. Ames Dep't Stores, Inc.*, 283 Ill.App.3d 555, 219 Ill.Dec. 215, 221, 670 N.E.2d 1103, 1109 (1st Dist.1996). The defendants answer the malicious prosecution claim, as they did the false arrest claim, by arguing that since probable cause existed to arrest Mr. Neal for attempted murder, Mr. Neal's malicious prosecution claim is vitiated. Again, to the extent Mr. Neal brings his malicious prosecution claim for the charge of attempted murder, the defendants are correct.

 But Mr. Neal's claim can be fairly read to bring a malicious prosecution claim for his possession arrest. Mr. Neal, however, has not presented evidence of malice against Chief of Police Burge or Officers Lawrence Patterson and James McGee. Summary judgment is appropriate with regard to those defendants under the Tort Immunity Act and for failure to prove the requisite elements of a malicious prosecution claim. There remains the issue of Officer Bryan Patterson's conduct. If Officer Bryan Patterson planted the substance on Mr. Neal, his conduct was malicious, and Mr. Neal may be able to make out a state law claim for malicious prosecution. The City of Harvey again only argues it is not liable because none of the officers are liable. Accordingly, summary judgment is inappropriate for Officer Bryan Patterson and the City of Harvey.

### C. Abuse of Process

 Mr. Neal charges Chief of Police Burge and the City of Harvey with abuse of process. "Abuse of process is the misuse of legal process to accomplish some purpose outside the scope of the process itself." *Community Nat'l Bank in Monmouth v. McCrery*, 156 Ill.App.3d 580, 108 Ill.Dec. 696, 698, 509 N.E.2d 122, 124 (3d Dist.1987). Mr. Neal must prove: "(1) existence of an ulterior motive or purpose, and (2) some act in the use of the legal process not proper in the regular prosecution of the proceedings." *Commerce Bank, N.A. v. Plotkin*, 255 Ill. App.3d 870, 194 Ill.Dec. 409, 411, 627 N.E.2d 746, 748 (3d Dist.1994). In his complaint, Mr. Neal alleged that Chief of Police Burge ordered his arrest at the behest of the Mayor of Harvey, David Johnson, because Mr. Neal was working on an opposing candidate's mayoral campaign. Mr. Neal has since dismissed Mayor Johnson from his complaint.[4] Mr.

---

3. The City of Harvey relies on Section 2–109 of the Tort Immunity Act, which states "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2–109.

4. The defendants argue that the dismissal of Mayor Johnson from this case is fatal to all of Mr. Neal's claims because Mr. Neal has somehow conceded that his theory of the case is wrong and that intent is now absent. First, Mr. Neal has not presented conspiracy claims to

which Mayor Johnson is a necessary party. Second, Mr. Neal's complaint is sufficient to state claim even after removing the allegations against Mayor Johnson from each of the counts. Third, Mr. Neal's dismissal of Mayor Johnson from this suit does not mean Mayor Johnson did not violate Mr. Neal's rights or that Mr. Neal's theory of the case is wrong. Finally, Mayor Johnson's actions, if proven, may indicate a motive for the defendants' actions, but they have nothing to do with whether the defendants personally intended

Neal presents no evidence that indicates Chief of Police Burge ordered his arrest at the behest of Mayor Johnson or had any ulterior motive for ordering his arrest for attempted murder. Indeed, as noted above, Chief of Police Burge had probable cause to arrest Mr. Neal.[5]

■ Further, Mr. Neal presents no evidence that Chief of Police Burge had an ulterior motive to arrest him for possession of a controlled substance. The entire evidence of Chief of Police Burge's involvement in the possession charge is Mr. Neal's deposition testimony that he heard a county sheriff say Chief of Police Burge had told Officer McGee to complete paperwork on the possession charge. This is insufficient to make out a claim for abuse of process.

■ Mr. Neal also charges the City of Harvey with abuse of process based on the actions of Officers Bryan Patterson, Lawrence Patterson, and James McGee. It may be determined that Officer Bryan Patterson had a malicious purpose and used the legal process to achieve that purpose. The City's only argument that an abuse of process claim is not viable is that the police had probable cause to arrest Mr. Neal for attempted murder and possession. Since probable cause may not have existed to arrest Mr. Neal for possession and the City offers no other reason that Mr. Neal's abuse of process claim is improper, summary judgment is inappropriate.

### Conclusion

The motion for summary judgment is granted in favor of Chief of Police Burge, Officer Lawrence Patterson, and Officer Ron Cross on Mr. Neal's claims for violation of Section 1983 (Counts 4, 8, 11), false arrest and false imprisonment (Counts 5, 9, 12), and malicious prosecution (Counts 6, 10, 13). Summary judgment is entered for Chief of Police Burge on Mr. Neal's claim for abuse of

process (Count 7). Summary judgment is also entered for Officer James McGee an Mr. Neal's claims for false arrest and false imprisonment and malicious prosecution (Counts 24, 25). Officer Bryan Patterson's motion for summary judgment is denied on Mr. Neal's claims for violation of Section 1983, false arrest and false imprisonment, and malicious prosecution, to extent they arise from Mr. Neal's arrest for possession of a controlled substance (Counts 17, 18, 19). Officer McGee's motion for summary judgment is also denied on Mr. Neal's Section 1983 claim arising from his possession arrest (Count 23). Finally, the City of Harvey's summary judgment motion is denied on Mr. Neal's claims for false arrest and false imprisonment, malicious prosecution, and abuse of process to the extent they arise from Mr. Neal's possession arrest (Counts 20, 21, 22).

---

to deprive Mr. Neal of his civil rights. Thus, the defendants' argument is without merit.

5. According to an internal investigation, when Chief of Police Burge was told by an officer that a police informant knew Mr. Neal was not the shooter, Chief of Police Burge told that officer to

keep his mouth shut and that the proper suspect was in custody. (Def.Ex. F). Even if true, this evidence can be interpreted in a multitude of ways and is insufficient to prove Chief of Police Burge had an ulterior motive for ordering Mr. Neal's arrest.